United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN ESCALANTE,<br><br>    Plaintiff,<br><br>v.<br><br>SAN FRANCISCO COMMUNITY COLLEGE DISTRICT, AND BOARD OF TRUSTEES, et al.,<br><br>    Defendants. | Case No. 18-cv-05562-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 32, 39 |

Pending before the Court are Defendants' motions to dismiss Plaintiff's first amended complaint ("FAC"). Dkt. Nos. 32, 39. The Court held a hearing on the motions on May 22, 2019. Dkt. No. 79. For the reasons set forth below, the Court **GRANTS** Defendants' motions to dismiss.

## I. BACKGROUND

Plaintiff Carolyn Escalante, proceeding pro se, filed her initial complaint against Defendants on September 11, 2018, alleging claims against each individual Defendant in their personal and official capacities. Dkt. No. 1. Defendants are associated with either the San Francisco Community College District ("SFCCD Defendants")[1] or the Service Employees International Union, Local 1021 ("SEIU Defendants").[2] On January 8, 2019, Plaintiff filed her

---

[1] The SFCCD Defendants are: San Francisco Community College District (the "District"); SFCCD's Board of Trustees; Mark W. Rocha, Chancellor; Dianna R. Gonzales, Vice Chancellor; Steven Bruckman, Executive Vice Chancellor and General Counsel; Trudy Walton, Vice Chancellor; Clara Starr, Associate Vice Chancellor; Elizabeth Coria, Associate Vice Chancellor; MaryLou Leyba-Frank, Dean; Sunny L. Clark, Associate Dean; Joseph A. Guiriba, Dean; Leilani F. Battiste, Deputy General Counsel; Leticia A. Santana Sazo, Human Resources; and Maria M. Lampasona, SFCCD Defendants' outside counsel. FAC ¶¶ 1–13.
[2] The SEIU Defendants are: Service Employees International Union, Local 1021; SEIU Local

amended complaint, adding Maria M. Lampasona, counsel for the SFCCD Defendants, as a Defendant. Dkt. No. 21 ("FAC").

### A. Plaintiff's 2011 Performance Review

The FAC alleges the following facts. Plaintiff began working at SFCCD in or around 1991 as a "4320 Cashier-I" employee. *Id*. ¶ 21. She was eventually promoted to a "1488 TIA-Evaluation Technician," where she processed certifications for Veterans Educational Benefits. *Id*. ¶ 22. During her time as a 1488 TIA-Evaluation Technician, Plaintiff alleges that Defendant Sunny Clark, one of the Associate Deans, purportedly demanded she "illegally bypass the approval process of VA Certifications" to "increase the weekly rate of VA Certifications." *Id*. ¶ 23. According to Plaintiff, because she refused to do so, Defendant Clark retaliated against her by giving her a poor performance review (called a "Classified Performance Evaluation" or "CPE") in April 2011. *Id*. ¶ 24. The CPE was allegedly false and "intended to blemish Escalante's character with derogatory and defamatory statements aimed at stagnating Escalante's employment opportunities or being compensated during her career with salary step increase or working out of class pay." *Id*. ¶ 24.

Plaintiff attempted to amend her performance evaluation by filing a "rebuttal" in 2012. *Id*. ¶ 25. Four years later in 2016, Plaintiff purportedly filed a request under California's Information Practices Act with SFCCD Defendant Clara Starr (Associate Vice Chancellor) seeking to "Amend, Correct or Sanitize specific parts of the false and derogatory CPE." *Id*. ¶¶ 25–26. Defendant Starr informed Plaintiff that "there is no language in the SEIU Contract to address such a request." *Id*. ¶ 26. This matter concluded in February 2018, when Defendant Steven Bruckman (Executive Vice Chancellor and General Counsel) sent Plaintiff a letter declining to amend or correct the CPE. *Id*. ¶ 29.

---

1021's affiliate City College Chapter; Roxanne Sanchez, President; Gregory Cross, Field Representative; Kaden Kratzer, Field Director; Athena Steff, President of City College Chapter; and Karl A. Gamarra, Vice President of City College Chapter. FAC ¶¶ 14–19. Plaintiff filed a motion to voluntarily dismiss Gregory Cross, which the Court granted. Dkt. No. 63.

### B. Plaintiff's Termination from the Airport Center

SFCCD Defendant Joseph A. Guiriba (another Associate Dean) was Plaintiff's supervisor in or around February 2016, when she was working at the "SFCCD Airport Center." *Id.* ¶¶ 30–31. According to Plaintiff, between July 2016 and August 2017, Defendant Guiriba asked Plaintiff to perform work assignments which required her to lift and stack boxes of paper weighing "approximately 40 or more pounds each," even though he purportedly knew about her medical condition, peripheral neuropathy. *Id.* ¶¶ 31–32. Peripheral neuropathy causes "permanent weakness, numbness and pain in the hands and feet," making it difficult for Plaintiff to lift objects over 10 pounds. *Id.* ¶ 22. She developed this condition as a result of her cancer treatments in 2011. *Id.* Because of Defendant Guiriba's alleged "negligent acts and inappropriate work assignments," Plaintiff contends that her "skin-expander implant ruptured," causing serious injuries, including a serious infection that required her to be hospitalized "or face death if emergency medical treatment and surgery was not performed." *Id.* ¶ 32. Further, despite his knowledge of her medical condition and her need to attend medical appointments, Defendant Guiriba allegedly required Plaintiff to still have "regular and prompt attendance." *Id.* ¶¶ 31, 33.

On November 13, 2017, Defendant Guiriba, SFCCD Defendant Elizabeth Coria (Associate Vice Chancellor), Plaintiff, and Plaintiff's brother attended a meeting to discuss termination of Plaintiff's assignment at the airport center due to her attendance record. *Id.* ¶¶ 34–39. Plaintiff would no longer be assigned to the airport center starting December 4, 2017. *Id.* The SFCCD Defendants scheduled another meeting for the following week so they could provide Plaintiff with documentation. *Id.* Following the November 13 meeting, Plaintiff alleges that she sent an email to SEIU Defendants Athena Steff and Karl A. Gamarra (President and Vice President of the City College Chapter, respectively) requesting union representation at the second meeting and all documentation "that would be used against" her. *Id.* ¶ 40. Plaintiff claims that union representatives did not attend the meeting, nor did they provide her with documentation. *Id.* During the second meeting, SFCCD Defendants Guiriba and Coria reiterated that Plaintiff's disciplinary action was because of her absences and tardiness. *Id.* ¶ 43. Plaintiff was not terminated from SFCCD but instead had diminished job responsibilities. *See id.* ¶ 52.

Based on these events, in 2018, Plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH") and an Unfair Practice Charge with the Public Employment Relations Board ("PERB"). *Id.* ¶¶ 45–62. The DFEH and PERB actions were pending as of the date of the FAC. *Id.* ¶¶ 56–57.

### C. Ms. Escalante's Allegations

Although Plaintiff's FAC is difficult to follow at times, it appears that she is alleging the following nine causes of action against all Defendants:

(1) violation of California's Fair Employment and Housing Act ("FEHA") for "adverse work environment and harassment," based on the SFCCD Defendants' alleged fabrication of a "false, derogatory CPE" and alleged discriminatory treatment because of her "age, and medical condition," *id.* ¶ 76;

(2) retaliation in violation of the Family and Medical Leave Act ("FMLA") and FEHA, based on the alleged fabrication and falsification of documents "used to take disciplinary action against Plaintiff," *id.* ¶ 77;

(3) disability discrimination in violation of FEHA and the Unruh Civil Rights Act, *id.* ¶ 78;

(4) denial of "reasonable accommodation" for Plaintiff's medical disability, including Defendants' failure to "establish a 'flexible work schedule,'" in violation of FEHA and the Americans with Disabilities Act ("ADA"), *id.* ¶ 79;

(5) arbitrary interference and retaliation in violation of FMLA and the California Family Rights Act ("CFRA"), based on Defendants' alleged fabrication of "false reasons" to "deplete her 480-hour entitlement to 'intermittent leave,'" the "bogus disciplinary proceedings" in which she was denied representation, and all the "policy, practice or procedure[s]" employed as a retaliatory method to "punish" Plaintiff for filing her grievances, *id.* ¶ 80;

(6) breach of statutory duty in violation of the Information Practices Act ("IPA"), codified in California Civil Code §§ 1798 *et seq.*, based on Defendants' refusal to amend her CPE and disciplinary documents, which were all "fabricated," *id.* ¶ 81;

(7) breach of contract and breach of fiduciary duty, premised on Defendants' alleged

4

actions to interfere with Plaintiff's "contractual rights under the Collective Bargaining Agreement ('CBA') to file grievances" and Defendants' alleged refusal to "refund all monies illegally extracted from her wages as dues payments," *id*. ¶¶ 82–83;

(8) Civil RICO violation based on Defendants allegedly conspiring to "use threats of intimidation and employment termination [ ] as a means to force [Plaintiff] against her own free will to pay union dues by illegally extracting monies from her employment wages," *id*. ¶ 84; and

(9) 1983 claim based on Defendants' "disregard for Escalante's medical disability and medical restrictions" when they assigned her "strenuous work," allegedly constituting cruel and unusual punishment under the Eighth Amendment and a violation of the Fourteenth Amendment's guarantee of due process, *id*. ¶¶ 85–86.

Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages of $18,000,000 plus an additional $5,000,000 per Defendant. *Id*., Prayer for Relief ¶¶ 1–2.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless,

5

Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). For that reason, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations marks and citations omitted). If dismissal is still appropriate, a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation and quotations omitted). Where leave to amend is appropriate, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

## III. DISCUSSION

The SEIU and SFCCD Defendants each filed a motion to dismiss. Dkt. Nos. 32 ("SEIU Mot."), 39 ("SFCCD Mot."). Given that the only basis for subject matter jurisdiction over Plaintiff's state law claims is supplemental jurisdiction, FAC at 4, the Court first addresses the federal claims.

### A. SFCCD Defendants

#### i. Eleventh Amendment Immunity

The SFCCD Defendants argue that the District and individual SFCCD Defendants are entitled to immunity under the Eleventh Amendment. SFCCD Mot. at 9–10. The Court agrees.

It is well-established that under the Eleventh Amendment, "agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). The Ninth Circuit has held that California state colleges and universities are "dependent instrumentalities of the state" and therefore have Eleventh Amendment immunity. *Id*. at 201; *see also Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 972 (9th Cir. 1994) ("We agree with the defendants that

the Eleventh Amendment bars us from hearing Cerrato's claims against the SFCC district."); *Harper ex rel. Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1115 (S.D. Cal. 2004) ("As an 'arm' of the state, the Poway Unified School District itself is shielded from liability under the Eleventh Amendment."). Individual defendants sued in their official capacities also "share in the district's eleventh amendment immunity." *Mitchell*, 861 F.2d at 201. Further, the constitutional bar applies to pendent claims, meaning the Eleventh Amendment bars a plaintiff's state law claims in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). There are three exceptions to this immunity: (1) a state may waive its Eleventh Amendment defense; (2) Congress may abrogate the states' sovereign immunity by acting pursuant to a grant of constitutional authority; and (3) a plaintiff may seek prospective injunctive relief to remedy violations of federal law, under the *Ex Parte Young* doctrine. *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001).

Plaintiff does not argue that California has waived its Eleventh Amendment defense, or that Congress abrogated California's sovereign immunity with respect to any of her causes of action. Instead, Plaintiff argues that "a plaintiff is allowed to bring a case before [a federal court] against *individual State representatives* acting in their individual capacity where there are federal law claims," and that she is allowed to sue state officials for injunctive relief. Dkt. No. 54 ("SFCCD Opp.") at 9.

While Plaintiff may bring claims against the individual SFCCD Defendants in their official capacities for prospective injunctive relief, the *Ex Parte Young* doctrine is inapplicable in a suit seeking injunctive relief on the basis of state law. *See Pennhurst*, 465 U.S. at 106. This means that here, Plaintiff may only seek prospective injunctive relief against the individual SFCCD Defendants for claims under the FMLA, ADA, Civil RICO, and § 1983. However, injunctive relief is available only if there is a "real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In this case, there are no allegations as to a "likelihood of substantial and immediate irreparable injury." *See id*. (citation and quotations omitted). Plaintiff's grievances all concern discrete alleged wrongs in the past, and she pleads no facts showing how or why there may be an ongoing threat of harm. *See* FAC ¶¶ 24–

29 (allegations concerning Defendants' conduct when issuing and responding to her 2011 work performance evaluation), 31–53 (allegations concerning Defendants' actions surrounding her work schedule and disciplinary action in 2016 and 2017), 64–67 (allegations concerning her dues and FMLA leave).

Further, Plaintiff's requested injunctive relief is of such an indefinite nature that it does not provide Defendants "fair and precisely drawn notice of what an injunction actually prohibits." *See Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1284 (N.D. Cal. 2012). She broadly requests an order for the SFCCD Defendants to "refrain from using in the work place Retaliation, Harassment, Discrimination or other methods or oppression or intimidation intended to abridge, obstruct, suspend, impede, or restrict Ms. Escalante from exercising her Federal or State Statutory rights or Constitutional Rights." FAC, Prayer for Relief ¶ 2. As it stands, the requested injunction simply directs Defendants to follow the law. It is unclear to the Court what the contours of this requested injunction are, and it undoubtedly fails to provide the Defendants any meaningful notice of what exactly is being required of them.

In short, the Court finds Plaintiff's requested equitable relief claim to be unsupported and so indefinite that it must be dismissed. Even construing the FAC liberally, Plaintiff cannot cure this deficiency by pleading any real and immediate threat such that equitable relief is warranted. *See Lopez*, 203 F.3d at 1128 (dismissal of a pro se complaint for failure to state a claim is proper where it is "obvious that the Plaintiff cannot prevail on the facts that he has alleged and that an opportunity to amend would be futile"). Any allegations of future harm would be purely speculative, and even if Plaintiff could craft a more specific requested injunction, Plaintiff is not entitled to this extraordinary equitable relief based on purely speculative harm. Accordingly, the Court **DISMISSES** the District, the Board of Trustees, and the individual SFCCD Defendants in their official capacities without leave to amend.[3]

---

[3] Like the District, all of Plaintiff's claims against the Board of Trustees are barred by the Eleventh Amendment. "Courts have held that a board of trustees is not a state official acting in its official capacity and thus the *Ex parte Young* doctrine does not apply to a board of trustees." *Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1289 (N.D. Cal. 2014) (citation omitted).

8

### ii. Qualified Immunity

While Plaintiff may not proceed against the SFCCD Defendants in their official capacities, she may theoretically proceed against the individual SFCCD Defendants in their individual capacities for monetary damages (provided that the claims satisfy the *Twombly* standard). *See Cerrato*, 26 F.3d at 973. "Personal-capacity suits seek to impose *personal liability* upon a government official for actions he takes under color of state law." *Id*. The Supreme Court has held that the distinction between "official capacity" and "individual capacity" is "best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (rejecting proposition that public official could not be held liable for discharging plaintiffs when acting in her official capacity because plaintiff was seeking to hold official personally liable). To the extent Plaintiff seeks damages against the SFCCD Defendants in their individual capacities, her claims are not barred by the Eleventh Amendment.

The SFCCD Defendants contend that the employees are protected by qualified immunity. For federal claims, an "official sued in his personal capacity, although deprived of eleventh amendment immunity, may assert a defense of qualified immunity." *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) (citing *Hafer*, 502 U.S. at 25). Qualified immunity is "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The defense of qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and (2) whether such right was clearly established at the time of the defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 535 U.S. 194, 201 (2001)). With respect to the second prong of the qualified immunity analysis, the Supreme Court has recently held that "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was

9

violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City and Cty. of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (citation and quotations omitted and omissions in original). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation and quotations omitted).

With respect to Plaintiff's § 1983 claim, considering the allegations in the light most favorable to Plaintiff, Plaintiff has alleged no facts which state the violation of a clearly established constitutional right. As discussed below in Section III(B), *infra*, Plaintiff's constitutional claims are not legally cognizable. Accordingly, the Court finds that she cannot plead additional facts that could overcome qualified immunity with respect to her § 1983 claim. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (because plaintiff cannot "cure the basic flaw" in the pleading, "any amendment would be futile," and "there is no need to prolong litigation by permitting further amendment").

As to Plaintiff's remaining federal claims, the Court finds that as alleged, the FAC does not specifically plead what purported misconduct violated Plaintiff's particular statutory rights. For example, with respect to Plaintiff's FMLA claims, she provides no explanation of the specific acts which were allegedly retaliatory, and instead merely "incorporates by reference each and every allegation contained in paragraphs 1 [through] 76." *See* FAC ¶ 77; *see also id*. ¶ 74 (alleging that Defendants violated the ADA because they "knew that statutory law required them to engage in a good faith interactive process with Escalante, make reasonable accommodations, or establish a 'flexible work schedule' … but refused to do so"). And in paragraphs 1 through 76, Plaintiff, in the same conclusory fashion, asserts that Defendants miscalculated Plaintiff's "480-hour entitlement of FMLA intermittent leave" without specifically identifying how this was retaliatory. *Id*. ¶¶ 65–66. Such conclusory allegations are insufficient to plead that the SFCCD Defendants violated statutory rights under any of the alleged causes of action.

Further, even if Plaintiff could allege a deprivation of a statutory right, the allegations in the FAC are far too general for the Court to find that any such right was "clearly established" at

10

the time of any alleged misconduct. *See White v. State of Alaska*, 46 F.3d 1149 (9th Cir. 1995) (table) (affirming grant of qualified immunity when allegations were "too general to establish a violation of a clearly established right such that a reasonable official would understand that his actions were violative of that right").[4] Based on the FAC, the Court cannot conclude that it was clearly established "beyond debate" that the conduct alleged (giving Plaintiff a poor performance evaluation, failing to correct that same evaluation, assigning her diminished job responsibilities, allegedly failing to provide her with a "flexible work schedule," FAC ¶ 79, and assigning her "strenuous" work, *id.* ¶ 85) necessarily would violate any federal statute. *See Sheehan*, 135 S. Ct. at 1774. The Court is not aware of any caselaw suggesting that the alleged misconduct violated clearly established law, and Plaintiff does not point to any.

Despite these deficiencies, at the motion to dismiss stage, a complaint will survive a qualified immunity defense if it "contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right." *Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018) (citation and quotation omitted). Because (notwithstanding some skepticism) the Court cannot say at this stage that amendment would be entirely futile, it will grant one opportunity for Plaintiff to amend to plead a violation of a clearly established statutory right. The Court thus **DISMISSES** the § 1983 claim against the individual SFCCD Defendants in their individual capacities without leave to amend, and **DISMISSES** the ADA, FMLA, and Civil RICO claims against the SFCCD Defendants in their individual capacities with leave to amend.

### iii. SFCCD Defendant Lampasona: Litigation Privilege

As to SFCCD Defendant Maria M. Lampasona, outside counsel for the SFCCD Defendants, the Court agrees that California's litigation privilege shields Lampasona from liability in this case. *See* SFCCD Mot. at 20. Plaintiff cannot maintain her claims against Defendant Lampasona, as all the facts alleged in the FAC against Defendant Lampasona relate to the subject matter of this litigation.

California's litigation privilege applies to any communication "(1) made in judicial or

---

[4] As an unpublished Ninth Circuit decision, *White* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

11

quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." *Graham-Sult v. Clainos*, 738 F.3d 1131, 1147 (9th Cir. 2013) (citation and quotations omitted and alterations in original). The privilege is broad and applies to statements outside of judicial proceedings. *Id*. at 1149; *see also Bighorn Capital, Inc. v. Sec. Nat'l Guar., Inc.*, No. C 15-03083 SBA, 2015 WL 9489897, at *2 (N.D. Cal. Dec. 30, 2015) (citing *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 831 (2003)). The litigation privilege "immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." *Graham-Sult*, 738 F.3d at 1147 (citation and quotations omitted). Therefore, the litigation privilege is a substantive defense that "a plaintiff must overcome to demonstrate a probability of prevailing." *Id*. (citation and quotations omitted).

The allegations against Defendant Lampasona are all related to Defendant Lampasona's purported communications between September 26, 2018 and December 4, 2018 with Plaintiff (and Plaintiff's brother) concerning this litigation. *See* FAC ¶¶ 73–75. Plaintiff concedes this in her opposition. SFCCD Opp. at 11. But she argues that the litigation privilege does not apply because Defendant Lampasona "had not entered an appearance" and that "service of process was not perfected" during this timeframe. *Id*. Even if the litigation privilege did apply, Plaintiff asserts that there is an exception under the FMLA. *Id*. at 11–12.

Plaintiff's arguments fail. The litigation privilege is not contingent on service or entry of an appearance, as the privilege may apply even before a judicial proceeding begins. *See Graham-Sult*, 738 F.3d at 1149; *Bighorn Capital*, 2015 WL 9489897. Whether Defendant Lampasona entered a formal appearance before the time she started communicating with Plaintiff is irrelevant to whether the communications concerned this litigation and were made in her capacity as the SFCCD Defendants' counsel. As to Plaintiff's purported FMLA exception, Plaintiff's cited cases are inapposite and do not stand for the proposition that the litigation privilege does not apply to FMLA claims. *See* SFCCD Opp. at 11. Rather, the "sole exception" to this privilege is a claim for malicious prosecution. *Graham-Sult*, 738 F.3d at 1148 (citation and quotation omitted). Plaintiff provides no authority to suggest otherwise.

Accordingly, given that Plaintiff's only allegations against Defendant Lampasona are based on communications to Plaintiff regarding the subject matter of this litigation, the Court finds that amendment would be futile. *See Lopez*, 203 F.3d at 1128. The Court **GRANTS** the SFCCD Defendants' motion to dismiss the claims against Defendant Lampasona without leave to amend.

### B. SEIU Defendants

As to Plaintiff's federal claims against the SEIU Defendants, the Court finds that even under a liberal interpretation of the FAC, Plaintiff has not pled the essential elements to state cognizable claims against these defendants under the *Twombly* standard. Plaintiff, although proceeding pro se, must still plead more than "labels and conclusions," as a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

#### i. FMLA Claims (Counts II, V)

Plaintiff's second and fifth claims allege retaliation and interference in violation of the FMLA, 29 U.S.C. § 2601 *et seq*. Under the FMLA, a plaintiff may bring a claim for retaliation and/or interference. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003). As to interference, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id*. (citing 29 U.S.C. § 2615(a)(1)). In contrast, "where an employee is punished for *opposing* unlawful practices by the employer, the issue then becomes one of discrimination and retaliation." *Id*. at 1133 (citation omitted).

The FMLA provides a private cause of action against employers who allegedly violate the protections of the act. 29 U.S.C. § 2617(a)(1). Although the FAC pleads that Plaintiff maintained "an employer-employee contractual relationship" with SEIU Local 1021, *see* FAC at 4, this is insufficient to allege that SEIU was Plaintiff's employer, especially in light of Plaintiff's unequivocal assertions that SFCCD was her employer and that SEIU was her union. *See* FAC at 2 (Plaintiff attempted to communicate "with her employer-defendants at the San Francisco Community College District"), 4 (Plaintiff was "employed at the SFCCD"), ¶ 21 ("Ms. Escalante began in May 1991 working with the SFCCD as a dedicated and enthusiastic … employee"), ¶ 41 (Plaintiff requested that SEIU provide her "union representation"); *see also* 29 U.S.C. §§ 203(e),

13

1  (g) (the term "employee" means "any individual employed by an employer," and the term

2  "employ" includes "to suffer or permit to work").[5]  That Plaintiff had to join the union as "a

3  condition of employment" is also inadequate to plead an employer-employee relationship between

4  the SEIU Defendants and Plaintiff.  *See* Dkt. No. 52 ("SEIU Opp.") at 2 ("As an employee of the

5  [District], plaintiff, like many other employees, are [sic] required … to join the [SEIU Local

6  1021].").

Given Plaintiff's allegations in the FAC, Plaintiff cannot plausibly allege that the SEIU Defendants were employers for purposes of the FMLA.  *See Lopez*, 203 F.3d at 1128.  The Court thus **GRANTS** the SEIU Defendants' motion to dismiss these claims without leave to amend.

### ii. Section 1983 Civil Rights Claim (Count IX)

Plaintiff brings a § 1983 claim against Defendants on the basis that Defendants violated the Eighth and Fourteenth Amendments when they allegedly conspired to assign her "strenuous" work, which purportedly constituted cruel and unusual punishment and deprived her of due process.  FAC ¶¶ 85– 86.  Though the standard is liberal when evaluating a motion to dismiss when the plaintiff is pro se, a "liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id*. (citations omitted).

Plaintiff's claim is frivolous.  The Eighth Amendment prohibits imposition of cruel and unusual punishment and is generally applied to conditions of post-conviction incarceration, although it also imposes certain limits on what can be made criminal and punished as such. *Ingraham v. Wright*, 430 U.S. 651, 667 (1977); *see also Martin v. City of Boise*, 902 F.3d 1031, 1046 (9th Cir. 2018), *amended and superseded on denial of reh'g*, 920 F.3d 584 (9th Cir. 2019). Plaintiff has not presented any authority, and the Court is aware of none, which authorizes Plaintiff to bring an Eighth Amendment claim against supervisors for assigning allegedly

---

[5] The FMLA incorporates the definitions of "employ" and "employee" from 29 U.S.C. § 203.  29 U.S.C. § 2611.

14

strenuous work in a case that does not concern the criminal process in any way. This interpretation would extend the Eighth Amendment far beyond the parameters set by the Supreme Court. *See Ingram*, 430 U.S. at 666–68 (Eighth Amendment generally inapplicable outside the criminal process). As to her substantive due process claim, Plaintiff fails to show how being assigned strenuous work rises to the level of a substantive due process claim. Because the Court finds this claim legally meritless in a manner that cannot be cured by more specific pleading, this claim is **DISMISSED** without leave to amend.

### iii. ADA Failure to Accommodate (Count IV)

The fourth cause of action alleges that the SEIU Defendants failed to accommodate Plaintiff's medical disability when they allegedly failed to make reasonable accommodations or establish a "flexible work schedule" for her. FAC ¶ 79. To state a failure to accommodate claim under the ADA, Plaintiff must demonstrate that "(1) [s]he is disabled within the meaning of the ADA; (2) [s]he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [s]he suffered an adverse employment action because of [her] disability." *Allen v. Pac. Bell*, 348 F. 3d 1113, 1114 (9th Cir. 2003).

The FAC does not contain any facts alleging that the SEIU Defendants had any involvement in any decision concerning Plaintiff's work schedule. All allegations concern the SFCCD Defendants. FAC ¶¶ 32–33. Plaintiff fails to coherently allege any facts indicating that the SEIU Defendants failed to make reasonable accommodations, and accordingly the Court **GRANTS** the motion to dismiss with leave to amend.

### iv. Civil RICO (Count VIII)

Plaintiff's eighth cause of action alleges a violation of Civil RICO, premised on the SEIU Defendants allegedly conspiring to "use threats of intimidation and employment termination in violation of the HOBBS Act as a means to force Escalante … to pay union dues by illegally extracting monies from her employment wages."[6] *Id.* ¶ 84. According to Plaintiff, Defendants'

---

[6] To the extent Plaintiff attempts to pursue a standalone substantive Hobbs Act claim, this is a criminal statute for which there is no private right of action. *See Diamond v. Charles*, 476 U.S. 54, 64–65 (1986) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Glassey v. Amano Corp.*, No. C-05-01604RMW, 2006 WL 889519,

15

"actions to illegally extract and collect monies from Escalante's wages constituted a pattern of racketeering activity" in violation of § 1962(c).[7] *Id.*

To state a claim under § 1962(c), Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004); *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the particularity requirements of rule 9(b) to RICO claims."). In the context of RICO, Rule 9(b) requires that a plaintiff "detail[s] with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011) (citing *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1991)). "A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *Id.* (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).

Plaintiff fails to sufficiently plead the required elements to allege a Civil RICO violation. Merely labeling Defendants' actions as "racketeering" does not adequately plead what predicate acts purportedly satisfy Rule 9(b). The FAC simply concludes that Defendants' allegedly illegal actions of "extract[ing] and collect[ing] monies from Escalante's wages constituted a pattern of racketeering activity." FAC ¶ 84. But Plaintiff must identify with particularity the "time, place, and manner of each act of fraud." *See Lancaster*, 940 F.2d at 405. And because it is unclear what the alleged "racketeering" activity is, the FAC fails to identify a "pattern" of any such activity, which requires a showing that the predicate acts have "the same or similar purposes, results,

---

at *3 (N.D. Cal. Mar. 31, 2006), *aff'd*, 285 F. App'x 426 (9th Cir. 2008) ("Private parties generally lack standing to enforce federal criminal statutes … [Plaintiff] lacks standing to enforce any cause of action based on Title 18 that he has alleged.").

[7] Although Plaintiff alleges a violation of "Section 1961(c)," FAC ¶ 84, the Court construes Plaintiff to mean § 1962(c), as § 1961 lists the definitions and does not include a subsection (c).

16

participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). With respect to causation, Plaintiff's conclusory allegation that she was "deprived of approximately $45,000.00 of pay wages," FAC ¶ 84, does not plead with particularity *how* the alleged predicate acts proximately harmed her property. *See Living Designs, Inc.*, 431 F.3d at 362.

Plaintiff's sparse allegations do not meet the pleading requirement to allege a Civil RICO violation. Accordingly, these claims are **DISMISSED** with leave to amend.[8]

### C. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (citation and internal quotations omitted).

Plaintiff's FAC does not contend that there is diversity jurisdiction, but rather alleges that the Court has subject matter jurisdiction over the federal claims and supplemental jurisdiction over the state claims. FAC at 5. Having dismissed all the federal claims, the Court, in its discretion, declines to assert supplemental jurisdiction over the remaining state law claims against the SEIU Defendants and the SFCCD Defendants in their individual capacities, unless and until Plaintiff can state a valid federal claim. Accordingly, Plaintiff's state law claims are **DISMISSED** without prejudice.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss is **GRANTED** as follows:

- All federal claims against the District, the Board of Trustees, Defendant

---

[8] In deciding whether to amend her complaint, Plaintiff should carefully consider whether the facts of this straightforward workplace dispute could possibly amount to a RICO violation.

17

1     Lampasona, and the individual SFCCD Defendants in their official capacities are **DISMISSED WITH PREJUDICE**;

- The § 1983 claim against the individual SFCCD Defendants in their individual capacities is **DISMISSED WITHOUT LEAVE TO AMEND**;
- The FMLA and § 1983 claims against the SEIU Defendants (*i.e.* the second, fifth, and ninth causes of action) are **DISMISSED WITHOUT LEAVE TO AMEND**;
- The FMLA, ADA, and Civil RICO claims against the SFCCD Defendants in their individual capacities (*i.e.* the second, fourth, fifth, and eighth causes of action) are **DISMISSED WITH LEAVE TO AMEND**;
- The ADA and Civil RICO claims against the SEIU Defendants (*i.e.* the fourth and eighth causes of action) are **DISMISSED WITH LEAVE TO AMEND**; and
- All state law claims are **DISMISSED WITHOUT PREJUDICE**.

    The Court cautions Plaintiff to carefully consider the above analysis when amending her complaint. There are only a handful of federal claims as to which the Court has granted leave to amend. Plaintiff may amend these claims to address the defects identified in this order, but may not add new claims or defendants in her second amended complaint. Plaintiff may include the currently-alleged state law claims against the SEIU Defendants and SFCCD Defendants in their individual capacities, without modification, in the second amended complaint, but should be aware that the Court will not exercise supplemental jurisdiction over these claims unless Plaintiff can sufficiently plead facts that give rise to cognizable claims under a federal statute. And even if Plaintiff eventually can sufficiently plead a federal claim, the Court will dismiss the state law claims if they fail to meet the applicable pleading standard. In any amended complaint, Plaintiff must clearly identify: (1) each legal claim; (2) the facts supporting each claim; and (3) the defendant against whom the claim is alleged. Plaintiff may not lump all Defendants together, and must plead her claims consistent with the requirements discussed above.

    The Court **SETS** a further case management conference for October 8, 2019 at 2:00 p.m. The parties do not need to submit a joint case management statement. Any amended complaint

18

must be filed within 28 days from the date of the case management conference.

Plaintiff is strongly encouraged to seek assistance at the Legal Help Center, which provides free information and limited-scope legal assistance to pro se litigants. More information about the Legal Help Center is provided at http://www.cand.uscourts.gov/legal-help.

**IT IS SO ORDERED.**

Dated: 9/30/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge